UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS E. PEREZ,
*Secretary of Labor, United States Department of Labor*,

                                             **Plaintiff,**

                              v.                                    1:12-CV-1278
                                                                 (FJS/TWD)

**CHAMPAGNE DEMOLITION, LLC** and
**JOSEPH A. CHAMPAGNE**,

                                             **Defendants.**
_____

**APPEARANCES**                                **OF COUNSEL**

**U.S. DEPARTMENT OF LABOR –**     **ALLISON L. BOWLES, ESQ.**
**NEW YORK OFFICE**                    **PATRICIA M. RODENHAUSEN, ESQ.**
Office of the Solicitor                 **LINDSEY A. ROTHFEDER, ESQ.**
201 Varick Street
New York, New York 10014
*Attorneys for Plaintiff*

**LUIBRAND LAW FIRM, PLLC**       **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
*Attorneys for Defendants*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff Thomas E. Perez brings this case in his official capacity as United States Secretary of Labor against Defendants Champagne Demolition, LLC and Joseph A. Champagne,

alleging that Defendants discriminated against their employee, Donald Miles, under section 11(c) of the Occupational Safety and Health Act of 1970 ("OSHA"). *See* 29 U.S.C. § 660(c)(1). Currently before the Court are the parties' motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

## II. BACKGROUND AND PROCEDURAL HISTORY[1]

**A. The parties and the underlying conduct**

Plaintiff Thomas E. Perez is the U.S. Secretary of Labor ("Secretary"). Donald Miles is a former employee of Defendant Champagne Demolition. Defendant Joseph Champagne is the managing member and part owner of Defendant Champagne Demolition, LLC, a firm engaged in demolition and asbestos abatement.

Mr. Miles' employment with Defendant Champagne Demolition began in February of 2010. In June of 2010, one of Defendant Champagne Demolition's projects took place at a site in Gloversville, New York. Mr. Miles was not assigned to work at the Gloversville worksite. Mr. Miles testified that he received a phone call from another employee of Defendant Champagne Demolition in which the employee told Mr. Miles that asbestos had been improperly removed at the Gloversville work site.

Although the parties disagree as to the details, it is undisputed that Mr. Miles subsequently went to the Gloversville worksite, entered the worksite, and removed a bag of waste which apparently contained improperly-removed asbestos. Mr. Miles then contacted Rob Schiller, one of Defendant Champagne Demolition's supervisors, and reported that there had

---

[1] Defendants admitted to all but one of the facts contained within Plaintiff's statement of material facts. *See* Dkt. Nos. 76-11, 81. Accordingly, for ease of reference, the Court generally draws its background of the case from these documents for the purpose of deciding the pending motions.

been improper asbestos removal at the Gloversville worksite. According to Mr. Miles, Defendant Champagne terminated his employment over the phone the next day. Defendant Champagne described himself as the president of Defendant Champagne Demolition. He also explained that "nobody could fire anybody. I have the final say. It's my company. I hire them, and I'm the only one that can fire them." *See* Dkt. No. 76-4, Pl.'s Ex. "C," at 8:11, 15: 21:24.

**B. State-court litigation**

There are two state-court actions that are relevant to the pending motions. First, Defendants filed a lawsuit against Mr. Miles on or about July 5, 2010 ("defamation action") claiming, among other things, that Mr. Miles defamed them by saying "Champagne Demolition is stealing asbestos." *See* Dkt. No. 63-17, Pl.'s Ex. "N," at ¶ 10; Dkt. No. 76-11 at ¶ 2. The parties stipulated to dismiss the action without prejudice on September 21, 2011.

Second, Mr. Miles filed a lawsuit against Defendant Champagne Demolition on February 7, 2012 ("whistleblower action"). Mr. Miles' primary claim was based on New York's public-sector whistleblower law, Labor Law § 740. Mr. Miles alleged, among other things, that 1) he was Defendant Champagne Demolition's employee on or about June 10, 2010, 2) he engaged in protected activity by reporting actual violations of New York asbestos regulations to his supervisor, 3) Defendant Champagne Demolition subsequently terminated his employment, and 4) his reporting asbestos violations motivated his termination.

Attorney Kevin Luibrand represented Defendant Champagne Demolition in the state whistleblower action. Mr. Luibrand also represents Defendants in this case. After conducting extensive discovery and resolving multiple motions *in limine*, Justice Aluisi of New York Supreme Court, Fulton County, presided over a five-day trial in the whistleblower action. At

trial, Mr. Miles called four witnesses; and Defendant Champagne Demolition called seven witnesses, including Defendant Champagne.

Defendant Champagne, who was not a party to the whistleblower action, coordinated Defendant Champagne Demolition's legal affairs, including its litigation against Mr. Miles. Defendant Champagne was present at counsel's table for each day of the trial and represented Defendant Champagne in settlement negotiations.

After the trial, which took place in July of 2014, the jury returned a verdict in favor of the plaintiff, Mr. Miles. In particular, the jury answered "yes" to the following questions:

- "[D]id [Mr. Miles] disclose or report a violation [of New York asbestos regulations] to a supervisor?"
- "Was [Mr. Miles] an employee of Defendant [Champagne Demolition] at the time of reporting which occurred on or about June 10th, to June 11th of 2010?"
- "[D]id Defendant [Champagne Demolition] commit an actual violation of law, Code Rule 56?"[2]
- "[W]as Defendant [Champagne Demolition's] reason for discharging [Mr. Miles] motivated by [Mr. Miles'] reporting of the violation?"

*See* Dkt. No. 76-4, Pl.'s Ex. "C," at 48-49; Dkt. No. 76-11 at ¶¶ 24-31.

Defendant Champagne Demolition subsequently moved for judgment notwithstanding the verdict, Mr. Miles opposed the motion, and the parties had a conference with the court. The court thereafter issued a written decision in which it denied Defendant Champagne's motion, affirmed the jury's verdict, and awarded Mr. Miles $103,793.84 for lost wages, $60,250.00 for attorney fees, and $2,098.83 for costs and disbursements. Judgment was entered on or about March 25, 2015.

---

[2] "Code Rule 56" refers to Part 56 of Title 12 of the New York Codes, Rules and Regulations, which sets forth New York's rules for asbestos abatement and handling. *See generally* 12 N.Y. Comp. Codes R. & Regs. Part 56.

Defendant Champagne Demolition then filed a notice of appeal on April 30, 2015, and on January 30, 2016, the Appellate Division, Third Department deemed Defendant Champagne Demolition's appeal to be abandoned under 22 N.Y. Comp. Codes R. & Regs. § 800.12.

**C. Instant action**

Shortly after Defendants commenced the defamation action, Mr. Miles filed an administrative complaint with the U.S. Occupational Safety & Health Administration's Office of Whistleblower Protection. After conducting an investigation, Plaintiff commenced this action on August 14, 2012. Among other things, Plaintiff alleges that Defendants retaliated against Mr. Miles for reporting asbestos violations by terminating his employment and bringing the defamation action against him.

On January 31, 2014, approximately six months before the state whistleblower trial took place, Defendants moved for summary judgment in this case, and Plaintiff opposed the motion. The arguments focused on Mr. Miles' employment status and the facts surrounding his entering the Gloversville worksite on June 10, 2010.

After the whistleblower action jury verdict, Plaintiff moved for partial summary judgment, seeking to estop Defendants from relitigating the issues noted above. Defendants opposed Plaintiff's motion with the affidavit of Defendants' attorney, Mr. Luibrand, which seeks a stay in this case pending resolution of the whistleblower action appeal but does not otherwise address any of the arguments that Plaintiff advances in support of his motion.

# III. DISCUSSION[3]

## A. Plaintiff's motion for summary judgment

### 1. *Defendants' failure to address Plaintiff's arguments*

Under this Court's local rules, "all motions *and opposition to motions* require a memorandum of law, supporting affidavit, and proof of service . . . ." L.R. 7.1(a)(1) (emphasis added). Moreover, it is well-settled that a court may treat as conceded any argument to which a party does not respond. *See, e.g.*, *Rusyniak v. Gensini*, No. 5:07-CV-0279, 2009 WL 3672105, *1 n.1 (N.D.N.Y. Oct. 30, 2009) (collecting authority for the proposition that parties opposing a motion "are deemed to have consented" to certain of the moving party's arguments by failing to address those arguments in their opposing papers). Under such circumstances, the moving party need only meet the "modest" burden of showing that "the legal arguments advanced in the movant's memorandum of law are *facially meritorious*." *Sorrentino v. Barr Labs., Inc.*, No. 5:09-CV-0591, 2010 WL 2026135, *4 (N.D.N.Y. May 20, 2010) (footnote omitted).

As stated, Defendants did not address any of the arguments Plaintiff made in support of his motion for summary judgment. Therefore, the Court finds that Defendants "are deemed to have consented" to Plaintiff's arguments. *See Rusyniak*, 2009 WL 3672105, at *1 n.1. Accordingly, the appropriate inquiry is whether Plaintiff's arguments are facially meritorious. *See Sorrentino*, 2010 WL 2026135, at *4.

---

[3] Although Defendants moved for summary judgment before Plaintiff, the Court addresses Plaintiff's motion first because the Court's ruling on Plaintiff's motion renders Defendants' motions academic.

### 2. *Substantive law: OSHA § 11(c) and N.Y. Labor Law § 740*

Congress passed the Occupational Safety and Health Act of 1970 ("OSHA") "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions . . . ." 29 U.S.C. § 651(b). Section 11 of OSHA prohibits employers from retaliating against their employees for reporting possible safety and health issues. *See* 29 U.S.C. § 660(c)(1) ("Section 11(c)"). If, upon an employee's complaint to the Secretary, the Secretary determines through investigation that there has been an OSHA violation, then the Secretary must bring an action against the employer in district court. *See* 29 U.S.C. 660(c)(2). To prevail upon a Section 11(c) retaliation claim, the Secretary must prove (1) the whistleblower's participation in a protected activity, (2) a subsequent adverse action by the employer against the whistleblower employee, and (3) a causal connection between the two. *See, e.g.*, *Reich v. Hoy Shoe Co., Inc.*, 32 F.3d 361, 365 (8th Cir. 1994) (quotation and footnote omitted); *Perez v. U.S. Postal Serv.*, No. 12-00315 RSM, 2015 WL 630476, *12 (W.D. Wash. Feb. 13, 2015) (citation omitted).

With respect to the first element, "complaints to employers, *if made in good faith*" regarding occupational safety and health matters, are protected under OSHA. 29 C.F.R. § 1977.9(c) (emphasis added). Additionally, Section 11(c) claims are subject to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): Plaintiff's burden to show prima facie case; Defendant's burden to articulate a legitimate, nondiscriminatory reason for the employment action; and Plaintiff's burden to show that Defendant's reason was pretextual. *See, e.g.*, *Chao v. Blue Bird Corp.*, No. 5:06-CV-341, 2009 WL 485471, *3 (M.D. Ga. Feb. 26, 2009) (citing [*McDonnell Douglas Corp.*, 411 U.S.] at 802-03).

Relatedly, New York Labor Law § 740 provides that employers

> shall not take any retaliatory personnel action against an employee because such employee . . . discloses, or threatens to disclose to a supervisor . . . an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to public health or safety . . . .

*See* N.Y. Lab. Law § 740(2)(a) ("Section 740"). Like OSHA § 11(c), Labor Law § 740 requires that an employer-employee relationship exist at the time of the reporting event. *See id.* Additionally, "an employee can prevail on a Section 740 claim only if he can prove an *actual violation* of law—a 'reasonable belief of a possible violation' will not suffice." *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 570 (E.D.N.Y. 2012) (quoting *Bordell v. General Elec. Co.*, 88 N.Y.2d 869, 644 N.Y.S.2d 912, 667 N.E.2d 922 (1996)) (citation omitted).

### 3. *Collateral estoppel*

In this case, Plaintiff urges the Court to afford preclusive effect to the state-court jury's findings in the whistleblower action.

> Issue preclusion, or collateral estoppel, which applies not to claims or to causes of action as a whole but rather to issues, bars litigation of an issue when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quotation and other citation omitted); *see also LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002). Federal courts apply New York law when considering the preclusive effect of a New York State court judgment. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). In addition to the above elements, New York law requires that "'the issue that was raised previously must be decisive of the present action,'" meaning that the issue "would prove or disprove, without more,

an essential element" of any of the instant claims. *Curry v. City of Syracuse*, 316 F.3d 325, 331-32 (2d Cir. 2003) (quotation and footnote omitted).

>Additionally,
>
>"[t]he burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion. . . . In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with . . . the party opposing the application of issue preclusion."

*Proctor*, 715 F.3d at 414 (quotation omitted).

### *i. As against Defendant Champagne Demolition*

With respect to the first element of the analysis, identity of issue, "it is not necessary that the issues be exactly identical; it is sufficient that 'the issues presented in [the earlier litigation] are substantially the same as those presented by [the later] action.'" *Zherka v. City of N.Y.*, 459 F. App'x 10, 13 (2d Cir. 2012) (quoting *ITT Corp. v. United States*, 963 F.2d. 561, 564 (2d Cir. 1992)). With respect to the issue of Mr. Miles' employment status, the state-court jury found that Mr. Miles was Defendant Champagne Demolition's employee at the time he reported asbestos violations. Under Section 740, an employee is one "who performs services for and under the control and direction of" the employer. N.Y. Lab. Law § 740(1)(a).

In contrast, the Commissioner's regulations provide that, "[f]or purposes of [OSHA], an employee is defined as 'an employee of an employer who is employed in a business of his employer which affects commerce.'" 29 C.F.R. § 1977.5(a) (quotation omitted). The Commissioner further clarifies that OSHA's "broad remedial nature" demonstrates a clear legislative intent to rely upon economic realities of the employment relationship as opposed to common law doctrines. *See id.* (citing *U.S. v. Silk*, 331 U.S. 704 (1947)) (other citation omitted). Thus, the Commissioner's regulations take a view of the employment relationship as "something

broader than the common-law definition. . . ." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324-25 (1992) (discussing *Silk*). Accordingly, because Plaintiff faces a more lenient standard in this case than that which Mr. Miles successfully proved in the whistleblower action with respect to his employment relationship, the Court finds these issues to be substantially the same.

Regarding the second issue of Mr. Miles' protected activity, the state-court jury found that Mr. Miles reported an actual violation of New York asbestos removal regulations to his supervisor on or about June 10, 2010. Because, as noted, OSHA requires only a "good faith" basis for making a complaint, as contrasted with Section 740's "actual violation" standard, the Court finds the state-court jury's protected activity finding to be substantially the same as the instant issue of whether Mr. Miles made a good faith complaint to his supervisor about "occupational safety and health matters" on or about June 10, 2010.

Regarding the third issue, Defendant Champagne Demolition's discharge of Mr. Miles, the state-court jury found that Defendant Champagne Demolition discharged Mr. Miles on June 11, 2010. Therefore, the Court finds that these two issues are identical.

Regarding the fourth issue of causation, the state-court jury found that Defendant Champagne Demolition's "reason for discharging [Mr. Miles] was motivated by [Mr. Miles'] reporting of" Defendant Champagne's violation of asbestos regulations. Therefore, the Court finds that these two issues are identical.

With respect to the second element of collateral estoppel, that the issues were actually litigated and decided, there is no dispute. The parties do not dispute that all of these issues were the subject of a five-day trial before a jury in New York Supreme Court, Fulton County. The

jury, after deliberations, made the findings noted above. Accordingly, the Court finds that all of the above issues were actually litigated and decided.

With respect to the third element of collateral estoppel, the full and fair opportunity to litigate, as Plaintiff points out, Defendants have not advanced any argument that would support meeting their burden on this element. Nevertheless, the Court notes that there are numerous factors here tending to show that Defendants had a full and fair opportunity to litigate these issues. The New York Court of Appeals has instructed that determining whether a party and its privies have had a full and fair opportunity to litigate entails

> an exploration of the various elements which make up the realities of [the prior] litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation.

*Schwartz v. Pub. Adm'r of Cnty. of Bronx*, 24 N.Y.2d 65, 72 (1969); *Kotler v. Donelli*, 528 F. App'x 10, 13 (2d Cir. 2013) (quotation omitted).

In the state-court litigation, Mr. Miles brought a single claim under N.Y. Labor Law § 740 against Defendant Champagne Demolition in Supreme Court, Fulton County, demanding two years' back pay and attorney fees. These facts suggest that the claim was sizable and was in an appropriate forum. Defendant Champagne Demolition called multiple witnesses and cross-examined each of Mr. Miles' witnesses, weighing toward a conclusion that it used initiative to its advantage. Additionally, the jury trial concerned the same nucleus of operative facts as the instant case, namely, Mr. Miles' reporting of asbestos issues to his supervisor and his subsequent termination from his employment with Defendant Champagne Demolition.

The co-extensiveness of the facts, together with the co-terminus nature in time between the whistleblower action and the instant case, suggest a high degree of foreseeability that findings in one action could preclude the same issues in the other. Further, as Plaintiff points out, the same experienced trial lawyer has represented Defendants in both matters. Also, as noted above, Plaintiff faces a lesser burden in this case than the Section 740 claim on which Mr. Miles prevailed in the whistleblower action—with respect to both reporting activity and employment status. Thus, it follows that the state-court jury's findings are sufficient to meet Plaintiff's substantive burden with respect to the same elements of the instant claim.

Additionally, Defendants have offered no indication of new evidence concerning this case since the state-court verdict, and neither is there any indication in the record of a compromise verdict. For all these reasons, the Court finds that Defendant Champagne Demolition had a full and fair opportunity to litigate each of the issues described above. For the same reason, Plaintiff, as a third party unrelated to the state-court litigation, may bar Defendant Champagne Demolition from relitigating these issues. *See Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 54 (2d Cir. 2008) (instructing that "if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit" (citation omitted)).

With respect to the fourth element of collateral estoppel, that the resolution of the issues was necessary to support a valid and final judgment on the merits, there is no dispute that the issues in question were necessary elements of Mr. Miles' Section 740 claim. Neither is there any dispute as to the validity of the state court's judgment in the whistleblower action. Therefore, the Court finds that Plaintiff has satisfied this element.

Finally, with respect to the question under New York law of whether these issues are "decisive" of essential elements of the instant claims, the Court finds that they are. As noted, an issue is decisive if it would "prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Curry*, 316 F.3d at 332. Here, the essential elements of Plaintiff's prima facie OSHA retaliation claim are (1) the whistleblower's participation in a protected activity; (2) a subsequent adverse action by the employer against the whistleblower employee, and (3) a causal connection between the two. *See Perez*, 2015 WL 630476, at *12. By way of comparison, as noted, the state-court jury found (1) that Mr. Miles was Defendant Champagne Demolition's employee on or around June 10, 2010, (2) that Mr. Miles reported actual violations of New York asbestos regulations on or about that date, (3) that Defendant Champagne Demolition subsequently terminated Mr. Miles' employment, and (4) that such termination was motivated in part by Mr. Miles' protected reporting activity. Accordingly, the Court finds that the state-court jury findings, without more, establish the essential elements of Plaintiff's Section 11(c) claim. Accordingly, the Court finds that these issues are "decisive" in this case. *See LaFleur*, 300 F.3d at 271.

### ii. As against Defendant Champagne

In this context, parties may be considered in privity where the interests of the nonparty were adequately represented in the first suit. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (instructing that "[w]hether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions"). In particular, New York law provides that privity may be present among "'*those who control an action although not*

*formal parties to it*, [and] *those whose interests are represented by a party to the action. . . .*'" *Ruiz v. Comm'r of Dep't of Transp. of City of N.Y.*, 858 F.2d 898, 903 (2d Cir. 1988) (quoting [*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)]).

In this case, it is undisputed that Defendant Champagne coordinated Defendant Champagne Demolition's involvement in the whistleblower action. It is further undisputed that he was its managing member and part owner and that he had the sole authority to hire and fire employees at all times relevant to this case. These facts support a conclusion that Defendant Champagne coordinated Defendant Champagne Demolition's legal affairs and further that his interests were represented in the whistleblower action. Accordingly, the Court finds that Defendant Champagne was in privity with Defendant Champagne Demolition for purposes of recognizing the state-court jury's findings as discussed above.

Additionally, with respect to Defendant Champagne's individual liability, Section 11(c)'s prohibition of discrimination by any "person" applies to individuals as well as legal entities. *See* 29 C.F.R. § 1977.4 (defining "person" as "'one or more individuals, partnerships, associations. corporations, business trusts, legal representatives, or any group of persons'" (quotation omitted)). On this point, federal courts consistently have held that individuals may be liable under Section 11(c) for retaliating against someone for making a safety and health complaint. *See, e.g.*, *Solis v. Brighton Med. Clinic*, No. 11-cv-02786, 2012 WL 4378427, *3 (D. Colo. Sept. 25, 2012) (collecting cases in support of the court's holding that a defendant doctor could not escape individual liability merely because his professional corporation was the "employer"); *Reich v. State Credit Inc.*, 897 F. Supp. 1014, 1016 (N.D. Ohio 1995) (holding that the individual defendant who fired the whistleblower plaintiff was "not excused from liability on the basis that he was merely his employer's agent").

As noted, it is undisputed that Defendant Champagne was the managing member of Defendant Champagne Demolition and had sole authority to hire and fire employees. Thus, the Court finds that the state-court jury findings are sufficient to hold Defendant Champagne liable under Section 11(c) for Mr. Miles' termination even though he was acting on behalf of Defendant Champagne Demolition.

Accordingly, the Court grants Plaintiff's motion for partial summary judgment with respect to both Defendants.[4]

**B. Defendant's motions for summary judgment and imposition of sanctions**

The Court's decision to grant Plaintiff's motion for summary judgment renders Defendants' motion for summary judgment moot. This is also so with respect to Defendants' motion for sanctions. Defendants argue that Mr. Miles trespassed on Defendant Champagne Demolition's work site, took videos and photos without permission, and stole a bag of asbestos from a trailer on the work site. In response, Plaintiff essentially argues that it cannot be held responsible for the conduct of a third party and that, at any rate, Defendants' unclean hands preclude sanctions because one of Defendant Champagne's managers lied to OSHA

---

[4] Any argument that Defendants would be prejudiced by so holding during the pendency of an appeal in state whistleblower action is moot because the Third Department recently deemed the appeal to be abandoned. *See* Dkt. No. 85, Letter Notice dated Feb. 11, 2016 (citing 22 N.Y. Comp. Codes R. & Regs. § 800.12). Moreover, even if the Court were to consider the arguments advanced in Mr. Luibrand's affidavit, "'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party'" in a later action. *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (quotation and other citations omitted). This is so because federal courts may relieve parties from a final judgment where such judgment "is based on an earlier judgment that has been reversed or vacated . . . ." Fed. R. Civ. P. 60(b)(5). Thus, even in the
event that Defendant Champagne Demolition successfully seeks leave of court to reinstate its appeal before the Third Department, such appeal would not preclude this Court from estopping Defendants from relitigating issues already decided in that case. *See id.*

investigators. Notwithstanding these issues, there is no prejudice to any party because there will be no opportunity for any wrongfully obtained evidence to be used at trial.[5] For this reason, the Court denies Defendants' motions for summary judgment and sanctions as moot.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions for summary judgment and for imposition of sanctions, *see* Dkt. No. 59, are **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for summary judgment, *see* Dkt. No. 76, is **GRANTED** with respect to liability as to both Defendants; and the Court further

**ORDERS** that the parties shall submit letter briefs not to exceed five pages regarding their respective positions as to damages, including whether they anticipate the need for a hearing, on or before **July 15, 2016**.

**IT IS SO ORDERED.**

Dated: June 29, 2016
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[5] Although Plaintiff urges the Court to read his complaint as entailing two claims, one arising out of Mr. Miles' termination and another arising out of the defamation action, the complaint is written as one claim with all of the factual allegations providing different examples of Defendants' intentional discrimination against Mr. Miles under Section 11(c). *See* Dkt. No. 1, Compl., at ¶¶ 11-22. Thus, affording preclusive effect to the state-court jury's findings is sufficient to support Defendants' liability under Section 11(c) without more. Accordingly, the Court declines Plaintiff's invitation to read his complaint as containing multiple claims. For this reason, the Court does not reach the novel issue of whether a defamation lawsuit may properly constitute an adverse action under Section 11(c); and, further, there is no need to conduct a trial to determine whether Mr. Miles' reporting activity caused Defendants to bring the defamation action against him.